UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MELISSA G. MARTIN, <br> Social Security No. XXX-XX-7768), <br><br> Plaintiff, <br><br> v. <br><br> JO ANNE B. BARNHART, Commissioner <br> of Social Security Administration, <br><br> Defendant. | 3:05-cv-102-WGH-RLY |

**MEMORANDUM DECISION AND ORDER**

**I.  Statement of Case**

Plaintiff, Melissa Martin, seeks judicial review of a final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income Benefits ("SSI") under the Social Security Act ("the Act").  42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f).  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).[1]

Plaintiff applied for SSI and DIB on September 16, 2000.  (R. 68-70).  Both applications were denied initially and on reconsideration.  (R. 28-39, 42-43). Plaintiff appeared and testified before Administrative Law Judge ("ALJ") Scott Miller on March 19, 2002.  (R. 242-72).  Plaintiff was represented at the hearing

---

[1] This matter is before the Magistrate Judge pursuant to the consent of counsel and the order of reference entered by the Honorable Richard Young, District Judge, on August 8, 2005.  (Docket No. 19).

by her attorney, Jerrold Dorn. (R. 21). Also testifying was a vocational expert ("VE"), Lisa Courtney, and plaintiff's husband, Thomas Martin. ALJ Miller ruled on May 15, 2002, that plaintiff was not disabled because she retained the residual functional capacity to perform a substantial number of jobs in the regional economy. (R. 19-27). The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review on April 15, 2005. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on May 19, 2005, seeking judicial review of the ALJ's decision.

## II. Vocational Profile

Plaintiff was born on August 7, 1958, and was 43 at the time of the ALJ's decision. (R. 25). Plaintiff was, therefore, a younger individual at all times relevant to the ALJ's decision. Plaintiff had a high school education, and her past relevant work consisted of jobs as an apartment manager, cashier, and secretary. (Brief in Support of Plaintiff's Complaint at 3).

## III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make

2

independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on plaintiff during steps one

through four, and only after plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

ALJ Miller concluded that plaintiff has not engaged in substantial gainful activity since her alleged onset date, and that she met the insured status requirements of the Social Security Act at all times relevant to the decision. (R. 25). The ALJ then concluded that plaintiff suffered from the severe impairments of chronic fatigue syndrome and anemia, but that none of these impairments met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26). The ALJ determined that plaintiff could not perform her past work, but retained the residual functional capacity to perform a full range of sedentary work. (R. 26). The ALJ concluded that plaintiff could still perform a significant number of jobs in the local and national economies. (R. 26). Therefore, the ALJ concluded that plaintiff was not under a disability at any time relevant to the decision.

## VI.  Discussion

The issue posed in this case is among the most difficult an ALJ is required to address. Specifically, plaintiff alleges that she suffers from chronic fatigue syndrome ("CFS") – a condition extremely difficult to diagnose by physicians and to assess by ALJs. Plaintiff pointed out what she believed were several deficiencies in ALJ Miller's decision. Specifically, plaintiff argues that the ALJ conducted an improper credibility determination, failed to re-contact Dr. Waits, and failed to

make a determination that plaintiff's CFS equaled one of the listings. Because the court concludes that ALJ Miller's analysis of plaintiff's CFS was inadequate, the court remands this case for a more articulate compliance with SSR 99-2p.

"Allegations of disability due to chronic fatigue syndrome ("CFS") present challenging circumstances for ALJs, because its symptoms are entirely subjective." *Davies v. Barnhart,* 2004 WL 3037940 (N.D. Ill. 2004). In light of the difficulties surrounding not only the diagnosis of CFS but also determining its severity, the Social Security Administration ("SSA") has issued a ruling specifically outlining the manner in which an ALJ is to evaluate CFS. *See* SSR 99-2p, Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS), 64 Fed.Reg. 23380 (hereinafter "SSR 99-2p"). According to SSR 99-2p, CFS is defined as "a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity. . . . It is characterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities." SSR 99-2p, 64 Fed.Reg. at 23381. The Ruling also indicates that CFS can constitute a medically determinable impairment if accompanied by certain medical signs or laboratory findings, but that a physician should make a diagnosis of CFS only after ruling out other possibilities. *Id.*

The SSA notes that the distinguishing characteristic of CFS is the presence of a persistent or relapsing chronic fatigue that has been clinically evaluated and (1) has not been lifelong; (2) is unexplainable by way of another physical or mental

5

disorder; (3) is not the result of ongoing exertion; (4) is not substantially alleviated by rest; and (5) causes a reduction in the individual's previous levels of occupational, educational, social, or personal activities. *Id.* In addition to the chronic fatigue, an individual must simultaneously display at least four of the following symptoms during a consecutive six-month period in which the symptoms have either persisted or recurred and did not pre-date the fatigue:

> Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;
> Sore throat;
> Tender cervical or axillary lymph nodes;
> Muscle pain;
> Multi-joint pain without joint swelling or redness;
> Headaches of a new type, pattern, or severity;
> Unrefreshing sleep; and
> Postexertional malaise lasting more than 24 hours.
>
> Within these parameters, an individual with CFS can also exhibit a wide range of other manifestations, such as muscle weakness, swollen underarm (axillary) glands, sleep disturbances, visual difficulties (trouble focusing or severe photosensitivity), orthostatic intolerance (e.g., lightheadedness or increased fatigue with prolonged standing), other neurocognitive problems (e.g., difficulty comprehending and processing information), fainting, dizziness, and mental problems (e.g., depression, irritability, anxiety).

*Id.* As the Seventh Circuit has noted, many of these symptoms can be easily fabricated. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). Hence, the SSA requires CFS to be established through medical signs and laboratory findings. SSR 99-2p, 64 Fed.Reg. at 23381-82. The examples of medical signs that SSR 99-2p lists which establish the existence of CFS as a medically determinable impairment include:

6

> Palpably swollen or tender lymph nodes on physical examination;
> Nonexudative pharyngitis;
> Persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; or,
> Any other medical signs that are consistent with medically acceptable clinical practice and are consistent with other evidence in the case record."

*Id.* at 23382, footnote omitted. Any one or more of these signs are indicative of CFS, and this list is not all inclusive. *Id.* While there are no specific laboratory tests that are widely accepted as being associated with CFS, SSR 99-2p recognizes several laboratory findings which can help to establish the existence of CFS. The findings recognized include: an elevated antibody titer to Epstein-Barr virus, an abnormal MRI brain scan, neurally mediated hypertension demonstrated by a positive tilt table test or some other clinically accepted test, or any other laboratory findings consistent with medically acceptable clinical practice. *Id.* Finally, the SSA recognizes that, in addition to physical manifestations of CFS, mental problems can develop as well. Thus, findings of problems with short-term memory loss, information processing, visual-spatial difficulties, or other cognitive developmental problems, as well as medical signs of anxiety or depression, can establish the existence of CFS as a medically determinable impairment. SSR 99-2p, 64 Fed.Reg. at 23382.

In this instance, there is a massive amount of overlap between the symptoms, medical signs, laboratory findings, and mental findings that plaintiff has displayed and that SSR 99-2p indicates are signs of CFS. First, with regard to plaintiff's symptoms, records from Richard E. Bell, M.D., indicate that plaintiff

7

suffered from headaches, dizziness, memory loss, and blurred vision. (R. 214). Gregory S. McCord, M.D., recorded joint pain and muscle weakness with no joint swelling in his records from August 3, 1999. (R. 139). Plaintiff demonstrated joint aches, back pain, knee pain and fatigue upon examination by Kristen Ganjoo, M.D., on April 17, 2001. (R. 221). The administrative record is also replete with plaintiff's complaints of fatigue that go well beyond the six-month period contemplated by SSR 99-2p. (*See e.g.* R. 241, 324-38).

The medical signs consistent with a diagnosis of CFS pursuant to SSR 99-2p include some reports of pharyngitis (or a sore throat) and muscle tenderness. In fact, Thomas M. Waits, M.D., plaintiff's treating physician, noted chronic existence of diffuse arthralgias and myalgias. (R. 323). Also noteworthy is the record of plaintiff's persistent fever. (R. 243-63, 324-33). As Judge Hamilton noted in *Davis v. Massanari,* the SSA issued a policy statement in 1993 indicating that one of the most prevalent medical findings consistent with CFS was a low grade fever that may continue for many months. *Davis v. Massanari,* 2001 WL 1175093 (S.D. Ind. 2001)(citing Social Security Administration, Program Operations Manual Systems § DI 24515.075). This is the type of "other medical signs that are consistent with medically acceptable clinical practice" that was contemplated by SSR 99-2p, and the court concludes that the persistent fever is, therefore, additional evidence of plaintiff's CFS.

Laboratory findings consistent with CFS include an abnormal MRI brain scan conducted March 27, 2001, by Andrew N. Beagle, M.D., that included non-specific punctate white matter signaling abnormalities involving both cerebral hemispheres (R. 264), and a positive lab test for Epstein-Barr virus antibodies (R. 215).

The case for the numerous diagnoses of CFS is buttressed by the fact that no other explanation has been found for all of plaintiff's complaints. As suggested in SSR 99-2p, a diagnosis of CFS should occur only after other medical or psychological causes of chronic fatigue are eliminated. SSR 99-2p, 64 Fed.Reg. at 23381. In plaintiff's case, the attempts to find another possible source of her ailments are so numerous that the court would be hard pressed to list them all. As Dr. Waits indicated, plaintiff "has had a complete rheumatologic evaluation, neurologic evaluation, hematologic oncologic evaluation, and infectious disease evaluation . . . and no specific cause has been found." (R. 329). Given such a wide array of results that point to CFS and no other explanation for plaintiff's ailments, the court cannot trace the path of ALJ Miller's reasoning when he concluded that the alleged severity of plaintiff's condition was not supported by medical evidence. In addition, ALJ Miller found that plaintiff's complaints were not fully credible because there were "no clinical findings showing that [she] is limited to the extent alleged," and he gave no credit to the opinions of her treating physician, Dr. Waits, because "his own treatment notes . . . reflect that all physical examinations of [plaintiff] were essentially normal." (R. 24).

Specifically troubling about the ALJ's decision was his treatment of the opinions of Dr. Waits, plaintiff's treating physician. The opinions of a treating physician are generally entitled to controlling weight. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). The ALJ, in this instance, concluded that Dr. Waits' opinions were not entitled to controlling weight because Dr. Waits had opined that plaintiff was totally disabled and unable to work, which are determinations reserved for the SSA, and because Dr. Waits' examinations of plaintiff were essentially normal. While it is true that the ultimate decision of disability is a decision to be made by the SSA, ALJ Miller failed to recognize the entirety of Dr. Waits' opinions. What Dr. Waits reported was that plaintiff suffered from "*persistent* fevers and arthralgias" which caused plaintiff to exhibit "extreme fatigue." (R. 241, emphasis added). The ALJ was required to give controlling weight to the opinion of Dr. Waits that plaintiff suffered from "extreme fatigue." The ALJ's conclusion that Dr. Waits' examinations of plaintiff were essentially "normal" is not a thorough reading of Dr. Waits' examination because there is nothing "normal" about a *persistent* fever or *constant* complaints of arthralgias and myalgias, both of which Dr. Waits saw. The fact that, during plaintiff's evaluation, test after test came back normal is completely consistent with SSR 99-2p. With CFS, a doctor must try to find some other source for a person's ailments. Only after searching in vain is a diagnosis of CFS appropriate. In this case, Dr. Waits did exactly what was required of him under SSR 99-2p. And, the ALJ's determination

10

that his opinions were not entitled to controlling weight warrants no less than a remand in this case.

Of additional concern was the ALJ's credibility determination. Usually, an ALJ's credibility determination will be upheld unless "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). In this case, ALJ Miller noted that plaintiff was not fully credible because, despite the fact that she claimed that she was unable to sit for more than one hour, had to lean on a wall in order to stand, and needed to sleep eight to ten hours per day, she "acknowledged that she is able to cook, do laundry, shop, go to church, visit her parents, and go to the movies, and she enjoys hobbies of writing songs, playing the organ, and singing." (R. 24). This is a mischaracterization of the record. At the hearing before ALJ Miller, plaintiff testified that her hobbies *used to* include writing songs, singing, and playing the organ, but she (1) never writes songs anymore because she cannot concentrate; (2) used to play the organ all of the time but now only does so if no one else is at church who can; and (3) does not sing much because it requires too much exertion. (R. 453).

The ALJ's only other apparent rationale for discrediting plaintiff's complaints was that no clinical findings show that plaintiff is limited to the extent that she alleges. (R. 24). However, the court notes that plaintiff exhibits virtually every single sign of CFS including an abnormal brain scan, a positive lab test for Epstein-Barr virus antibodies, chronic fatigue, sore throat, joint and muscle pain, a persistent fever, short term memory problems, dizziness, sleep problems, and

headaches. And, once the claimant produces medical evidence of CFS, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Davis,* 2001 WL 1175093. In fact, had ALJ Miller evaluated plaintiff's complaints in accordance with 20 C.F.R. § 404.1529(c)(3),[2] he would have found that many of the factors listed weigh heavily in favor of plaintiff's complaints. For instance, the record indicates that plaintiff has used numerous medications for her ailments, some of which have had side effects. Additionally, plaintiff has engaged in extensive testing and treatment in order to try to resolve her ailments including blood transfusions, a spleen removal, bone marrow biopsy, endoscopy, sigmoidoscopy, and virtually every other test that her doctors have been able to think of, all to no avail. Hence, the court concludes that, because ALJ Miller (1) mischaracterized plaintiff's daily activities; (2) improperly concluded that she was not credible based on a lack of objective medical findings alone; and (3) failed to recognize that many of the factors listed in § 404.1529 weighed heavily in plaintiff's favor, the ALJ's decision was patently wrong.

The court also notes that ALJ Miller concluded at step three of the five-step process that plaintiff did not meet any of the listings under 20 C.F.R. Part 404, Subpart P, Appendix 1. However, he did not note exactly which listings he considered. And, SSR 99-2p specifically indicates that, when an individual has

---

[2]The factors listed by the SSA include such things as the type, dosage, and side effects of medication, treatment other than medication, and other measures used to relieve pain or other symptoms.

psychological manifestations related to CFS, consideration must be given to whether or not the person's impairments meet or equal any of the listings concerning mental impairments. SSR 99-2p, 64 Fed.Reg. at 23383-84. In this case, the medical records clearly suggest that plaintiff suffered from short-term memory loss. And, at the hearing, plaintiff's husband testified to specific instances of memory loss.[3] Additionally, a state agency physician, J.V. Corcoran, M.D., noted that the SSA would "need a . . . psych[ological] evaluation for allegations of memory problems, abnormal scans of brain, increased confusion and forgetfulness. . . ." (R. 109). Despite all of the concerns regarding plaintiff's memory, the court finds no evidence that such a psychological evaluation was administered by the SSA, and virtually no mention was made of plaintiff's memory problems by ALJ Miller. This was a significant error.

Given the complete lack of explicit reliance by ALJ Miller on SSR 99-2p, or any clear articulation that he followed the procedure outlined in the ruling, the court must remand the Commissioner's decision.[4]

---

[3]SSR 99-2p specifically notes that in assessing an individual's complaints of CFS, third-party information can be especially helpful. "Information other than an individual's allegations and reports from the individual's treating sources helps to assess an individual's ability to function on a day-to-day basis and to depict the individual's capacities over a period of time." SSR 99-2p, 64 Fed.Reg. at 23384. Such information can come from family, co-workers, friends, or other sources. In light of the approval of such information by SSR 99-2p, the court believes that ALJ Miller should have used such helpful information in assessing how plaintiff's lapses in memory affect her life.

[4]The court gave serious consideration to reversing the decision in this case. However, further development of the record as to plaintiff's mental impairments is likely necessary before a final decision can be rendered on that aspect of plaintiff's disability claim.

## VII.  Conclusion

The ALJ's decision failed to comply with SSR 99-2p.  The Commissioner's decision is, therefore, **REMANDED** for a more specific evaluation under that ruling.

**SO ORDERED.**

**Dated:**   02/28/2006

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Stuart Barasch
sbarasch1@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov